Justice Stevens,
with whom Justice Thomas joins,
dissenting.
Franchised dealers who sell Volvo trucks, like those who sell automobiles, farm equipment, washing machines, and a variety of other expensive items, routinely engage in negotiations with prospective purchasers. Sometimes the prospect is simultaneously negotiating with two Volvo dealers, sometimes with a Volvo dealer and a dealer representing another manufacturer, and still other times a satisfied customer who is generally familiar with the options available in a competitive market may negotiate with only one dealer at a time. Until today, the Robinson-Patmah Act’s prohibition of price discrimination[1] would have protected the dealer’s ability to negotiate in all those situations. Today, however, by adopting a novel, transaction-specific concept of competition, the Court eliminates that statutory protection in all but those rare situations in which a prospective purchaser is negotiating with two Volvo dealers at the same time.
I
Setting aside for the moment the fact that the case involves goods specially ordered for particular customers *183 rather than goods stocked in inventory, the case is a rather ordinary Robinson-Patman suit. Respondent Reeder alleged a violation of the Act; the parties submitted a good deal of conflicting evidence to the jury; the trial judge properly instructed the jurors on the elements of price discrimination, competitive injury, and damages; and the jury returned a verdict resolving all issues in Reeder’s favor. The Court of Appeals found no error in either the instructions or the sufficiency of the evidence. 374 F. 3d 701 (CA8 2004).
Two issues of fact bear particular mention.
First, Volvo does not challenge the jury’s finding of price discrimination. Reeder’s theory of the case was that Volvo sought to cut back its number of dealers and deemed Reeder expendable. To avoid possible violations of franchise agreements and state laws, Volvo chose to accomplish this goal by offering Reeder worse prices than other regional dealers.
Reeder introduced substantial evidence of this theory. It showed that Volvo had an explicit business strategy, known as the “Volvo Vision,” of “fewer dealers, larger markets.” App. 34. It showed that Volvo could afford to lose sales as it squeezed dealers out, since the boom years of the late 1990’s left Volvo with about as many orders as it could fill. Id., at 256-257. And it showed that Volvo frequently gave worse prices to it than to other regional dealers. On at least four occasions, Volvo sold trucks to Reeder at significantly higher prices than to other dealers buying similar trucks around the same time.[2] To give one example, in the spring of 1998 Volvo sold 20 trucks to Reeder at a 9% concession, but sold similar trucks to a Texas dealer at a 12.3% concession. Id., at 132-134. This left Reeder paying $2,606 more per truck. Id., at 134. Although the Court chides Reeder *184 for failing to perform statistical analyses, see ante, at 172-173, 178, the jury clearly had a sufficient basis for finding price discrimination. It could infer that Volvo’s pricing policies were comparable to a secret catalog listing one set of low prices for its “A” dealers and a higher set for its “B” dealers like Reeder, with an exception providing for the same prices where an “A” dealer and a “B” dealer were engaged in negotiations with the same customer at the same time.
Second, the jury found that the favored dealers at issue in these, comparisons were competitive players in the same geographic market as Reeder. This conclusion is implicit in the jury’s finding of competitive injury, since the jury instruction on that element required Reeder to prove
“a substantial difference in price in sales by defendant to plaintiff and other competing Volvo dealers over a significant period of time. This requires plaintiff to show that it and the other Volvo dealer(s) were retail dealers within the same geographic market and that the effect of the price differential was to allow the other Volvo dealer(s) to draw sales or profits away from plaintiff.” App. 480, Instruction No. 18.
Volvo does not dispute that the evidence was sufficient to support the jury finding that Reeder and the favored dealers operated in the same geographic market.[3] Volvo’s restraint is wise, as Reeder offered evidence that truck buyers are unsurprisingly mobile, that it delivered trucks to purchasers throughout the region, and that customers would sometimes solicit bids from more than one regional Volvo dealer.
*185 II
For decades, juries have routinely inferred the requisite injury to competition under the Robinson-Patman Act from the fact that a manufacturer sells goods to one retailer at a higher price than to its competitors. This rule dates back to the following discussion of competitive injury in Justice Black’s opinion for the Court in FTC v. Morton Salt Co., 334 U. S. 37 (1948):
“It is argued that the findings fail to show that respondent’s discriminatory discounts had in fact caused injury to competition. There are specific findings that such injuries had resulted from respondent’s discounts, although the statute does not require the Commission to find that injury has actually resulted. The statute requires no more than that the effect of the prohibited price discriminations ‘may be substantially to lessen competition... or to injure, destroy, or prevent competition.’ After a careful consideration of this provision of the Robinson-Patman Act, we have said that ‘the statute does not require that the discriminations must in fact have harmed competition, but only that there is a reasonable possibility that they “may” have such an effect.’ Corn Products Co. v. Federal Trade Comm’n, 324 U. S. 726, 742. Here the Commission found whát would appear to be obvious, that the competitive opportunities of certain merchants were injured when they had to pay respondent substantially more for their goods than their competitors had to pay. The findings are adequate.” Id., at 45-47 (footnote omitted).
We have treated as competitors those who sell “in a single, interstate retail market.”. Falls City Industries, Inc. v. Vanco Beverage, Inc., 460 U. S. 428, 436 (1983); cf. Tampa Elec. Co. v. Nashville Coal Co., 365 U. S. 320, 327 (1961). Under this approach — uncontroversial until today — Reeder *186 would readily prevail. There is ample evidence that Volvo charged Reeder higher prices than it charged to competing dealers in the same market over a period of many months. That those higher prices impaired Reeder’s ability to compete with those dealers is just as obvious as the injury to competition described by the Court in Morton Salt.
Volvo nonetheless argues that no competitive injury could have occurred because it never discriminated against Reeder when Reeder and another Volvo dealer were seeking concessions with regard to the same ultimate customer. In Volvo’s view, each transaction was a separate market, one defined by the customer and those dealers whom it had asked for bids. For each specific customer who has solicited bids, Reeder’s only “competitors” were the other dealers making, bids. Accordingly, if none of these other dealers were Volvo dealers, then Reeder suffered no competitive harm (relative to other Volvo dealers) when Volvo gave it a discriminatorily high price.
Unlike the Court, I cannot accept Volvo’s vision. Nothing in the statute or in our precedent suggests that “competition” is evaluated by a transaction-specific inquiry, and such an approach makes little sense. It requires us to ignore the fact that competition among truck dealers is a continuing war waged over time rather than a series of wholly discrete events. Each time Reeder managed to resell trucks it had purchased at discriminatorily high. prices, it was forced either to accept lower profit margins than were available to favored Volvo dealers or to pass on the higher costs to its customers (who then might well go to a different dealer the next time). And we have long indicated that lost profits relative to a competitor are a proper basis for permitting the Morton Salt inference. See, e. g., Falls City Industries, 460 U. S., at 435 (noting that to overcome the Morton Salt inference, a defendant needs “evidence breaking the causal connection between a price differential and lost sales or profits” (emphasis added)). By ignoring these commonsense points, *187 the Court gives short shrift to the Robinson-Patman Act’s prophylactic intent. See 15 U. S. C. § 13(a) (barring price discrimination where “the effect of such discrimination may be substantially to lessen competition” (emphasis added)); see also, e. g., Morton Salt, 334 U. S., at 46.
The Court appears to hold that, absent head-to-head bidding with a favored dealer, a dealer in a competitive bidding market can suffer no competitive injury.[4] It is unclear whether that holding is limited to franchised dealers who do not maintain inventories, or exeludes virtually all franchisees from the effective protection of the Act. In either event, it is not faithful to the statutory text.
III
As the Court recognizes, the Robinson-Patman Act was primarily intended to protect small retailers from the vigorous competition afforded by chainstores and other large volume purchasers. Whether that statutory mission represented sound economic policy is not merely the subject of serious debate, but may well merit Judge Bork’s characterization as “wholly mistaken economic theory.”[5] I do not suggest that disagreement with the policy of the Act has played a conscious role in my colleagues’ unprecedented decision today. I cannot avoid, however, identifying the irony in a decision refusing to adhere to the text of the Act in a case in which the jury credited evidence that discriminatory *188 prices were employed as means of escaping contractual commitments and eliminating specifically targeted firms from a competitive market. The exceptional quality of this case provides strong reason to enforce the Act’s prohibition against discrimination even if Judge Bork’s evaluation (with which I happen to agree) is completely accurate.
Accordingly, I respectfully dissent.

 Section 2 of the Clayton Act, as amended by §1 of the Robinson-Patman Act, provides in relevant part:
“It shall be unlawful for any person ... to discriminate in price between different purchasers of commodities of like grade and quality... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.” 38 Stat. 730, as amended, 49 Stat. 1526, 15 U. S. C. 113(a).

 Additionally, on more than 12 other occasions, Volvo offered worse deals to Reeder than it gave to dealers who made comparable purchases. Arguably due to Volvo’s stingy concessions, Reeder failed to close with its customers in these instances and thus never ended up buying the trucks at issue from Volvo.

 Similarly, and despite its selective discussion of the extensive eviden-tiary record, ante, at 170-173, the Court does not question the sufficiency of the evidence supporting the jury’s finding that Volvo engaged in price discrimination against Reeder relative to other regional Volvo dealers for a significant period of time.

 Indeed, if Volvo’s argument about the meaning of “purchaser,” see ante, at 179-180, ultimately meets with this Court’s approval, then the
Robinson-Patman Act will simply not apply in the special-order context. Any time a special-order dealer fails to complete a transaction because the high price drives away its ultimate customer, there will be no Robinson-Patman violation because the dealer will not meet the “purchaser” requirement, and any time the dealer completes the transaction but at a discriminatorily high price, there will be no violation because the dealer has no “competition” (as the majority sees it) for that specific transaction at the moment of purchase.

 R. Bork, The Antitrust Paradox 382 (1978).